IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 4:21-cr-90 |
| | § | |
| WILLIAM LEDESMA | § | |
| DANIEL DIAZ-ALACANTARA | § | |

**MEMORANDUM OPINION**

Before the Court are Defendants William Ledesma and Daniel Diaz-Alacantara's motions to suppress. Docket Nos. 143, 144. The motions, which are identical in all key respects, seek to suppress evidence obtained by warrants from three homes controlled by Defendants. The motions argue that the officers conducting the search and seizures lacked a good-faith basis to rely on the warrants. Defendants' arguments fail. Accordingly, on August 23, 2022, the Court **DENIED** the motions. This memorandum opinion explains the Court's reasoning.

**I.**

The facts of this case are in relevant part undisputed. On March 31, 2021, Judge Warren Nystrom issued three warrants authorizing searches of the following Dallas County properties: 5184 Lauderdale Street, Dallas; 1309 West Bruton Road, Mesquite; and 2715 Ann Arbor Road, Dallas. The warrants directed law enforcement to search and seize "Illegal Narcotics," including heroin and methamphetamine, narcotic paraphernalia, and any items "believed to be used in the commission of said illegal activity." Docket No. 143, Ex. 1 at 1-2, Ex. 2 at 1-2, Ex. 3 at 1-2.

Each warrant was based on a sworn affidavit of A. Berg, an officer with the

Criminal Investigations Division of the Mesquite Police Department. Docket No. 143, Ex. 3 at 2. Officer Berg testified that he had probable cause to believe Defendants had committed the offense of Manufacture/Delivery of a Controlled Substance PG 1 ≤400g (Methamphetamine), a felony. Officer Berg stated that in "March of 2021," investigators from his department received "information from a Cooperating Defendant regarding a source of supply for Methamphetamine." *Id.* The Cooperating Defendant stated that he had "made large purchases of illegal narcotics from said supply," and identified the supplier as a Hispanic male who goes by the nickname "Chilango" and drives a black Dodge Ram. *Id.* The Cooperating Defendant also said that Chilango has a business partner named "William," and that he knows "the two have a 'stash' and 'cook' location in Mesquite." *Id.*

Officer Berg stated in his affidavit that, based on this information, investigators believed the Cooperating Defendant was describing Defendants. *Id.* Officer Berg explained that, earlier, on March 22, 2021, investigators observed Defendants "parked outside a location under surveillance by [the] Mesquite Police Department." *Id.* Defendants arrived at the location in a black 2017 Dodge Ram, and investigators witnessed the Cooperating Defendant place a "plastic tote with orange lid in the back seat of the Dodge Ram." *Id.* at 2–3. Investigators then followed the Dodge Ram to 2715 Ann Arbor, then to 5184 Lauderdale Street, and back again to 2715 Ann Arbor. *Id.* at 3.

Officer Berg testified that investigators asked the Cooperating Defendant about the March 22 surveillance, showing him photos of Defendants taken on that

2

date. *Id*. The Cooperating Defendant explained that the person driving the Dodge Ram was Chilango, his "source of supply for Methamphetamine," and the other person was Chilango's partner William. *Id*. The plastic tote the Cooperating Defendant placed in the Dodge Ram "contained U.S. Currency owed to 'Chilango' for the purchase of illegal narcotics." *Id*.

According to Officer Berg, investigators then determined through license plate reader programs that the Dodge Ram had scanned behind a secured gate at 1309 West Bruton Road in Mesquite in the "last 10 days of this request." *Id*. Further, "[t]hrough various law enforcement databases, Alacantara and William are documented to be associated with 1309 West Bruton Road" in Mesquite. *Id*. Officer Berg concluded that investigators had "good reason to believe a large supply of narcotics and US Currency will be located at 1309 West Bruton Road, Mesquite, 2715 Ann Arbor Avenue, Dallas, and 5184 Lauderdale Street, Dallas." *Id*.

Indeed, a search of the properties at 1309 West Bruton and 2715 Ann Arbor resulted in the seizure of "two active methamphetamine conversion labs," as well as items used to smuggle narcotics into the United States from Mexico, a detailed drug ledger, and approximately two kilograms of methamphetamine, among other items. Docket No. 1, Ex. 1 at 3–4. Nothing in the record indicates what was seized from the property at 5184 Lauderdale Street.

Defendants now move to suppress this evidence, claiming that the searches were "illegal and unconstitutional" and "in violation of the Fourth Amendment of the Constitution of the United States." *See* Docket No. 143 at 1; Docket No. 144 at 1.

3

Defendants claim that the searches violated the Fourth Amendment because the warrants authorizing them lacked probable cause and the officers' reliance upon the warrants was not objectively reasonable. *See* Docket No. 143 at 1; Docket No. 144 at 1.

## II.

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and requires that search warrants issue only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S. CONST. AMEND. IV. "When government officials conduct a search in violation of the Fourth Amendment, prosecutors are barred from introducing evidence obtained in the unlawful search at trial." *United States v. Aguilar*, 973 F.3d 445, 449 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1102 (2021). This judicially-created remedy—designed to "safeguard Fourth Amendment rights generally through its deterrent effect"—is known as the exclusionary rule. *United States v. Beverly*, 943 F.3d 225, 232 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 2550 (2020) (cleaned up).

In *United States v. Leon*, the Supreme Court established an exception to the exclusionary rule: the good-faith exception. 468 U.S. 897, 919–922 (1984). *Leon* held that the exclusionary rule should not apply where the officer's reliance on the warrant was objectively reasonable and in "good faith"—even if the search warrant is later invalidated for lack of probable cause. *Id.*; *United States v. Payne*, 341 F.3d 393, 399

(5th Cir. 2003). Relying on *Leon*, the Fifth Circuit has held that "if law enforcement officials act in objectively reasonable good-faith reliance upon a search warrant, then evidence obtained pursuant to the warrant is admissible even if the affidavit on which the warrant was grounded was insufficient to establish probable cause." *United States v. Juarez*, 407 F. App'x 824, 825 (5th Cir. 2011).

Accordingly, when a defendant moves to suppress evidence obtained with a warrant, courts generally determine first whether the good-faith exception applies. *See, e.g.*, *United States v. Sibley*, 448 F.3d 754, 757 (5th Cir. 2006); *Payne*, 341 F.3d at 399; *United States v. McGaffey*, No. 4:21-cr-113-JDK-KPJ, ECF No. 44 at *4 (E.D. Tex. Nov. 12, 2021). If the exception applies, then courts typically deny the motion without deciding whether the warrant was based on probable cause. *United States v. Gates*, 2021 U.S. Dist. LEXIS 132461, at *1 (E.D. Tex. July 16, 2021) (citing *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999) (If the good-faith exception applies, courts do not need to decide "whether there was a substantial basis for the magistrate's determination that probable cause existed."); *United States v. Maggitt*, 778 F.2d 1029, 1033 (5th Cir. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 264 (1983) (White, J., concurring)).[1]

---

[1] If, however, the case presents a "novel question of law whose resolution is necessary to guide future action by law enforcement officers and magistrates," then courts may proceed to the next step of deciding whether the warrant was based on probable cause. *See Maggitt*, 778 F.2d at 1033. Because Defendants do not argue that this case presents such a "novel question" and because the Court finds the good-faith exception applies here, the Court need not consider whether Judge Nystrom had a substantial basis for finding probable cause. *See, e.g.*, *United States v. Contreras*, 905 F.3d 853, 857–58 (5th Cir. 2018) (quotation omitted); *United States v. Kleinkauf*, 2010 WL 3781882, at *2 (E.D. Tex. Sept. 20, 2010), *aff'd*, 487 F. App'x 836 (5th Cir. 2012).

In determining whether the good-faith exception applies, the Court does not "attempt an 'expedition into the minds of police officers' to determine their subjective belief regarding the validity of the warrant." *Payne*, 341 F.3d at 400 (quoting *Leon*, 468 U.S. at 922 n.23). Rather, the Court's inquiry is "confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. Such an inquiry "will ordinarily depend on an examination of the affidavit by the reviewing court" and will consider "all of the circumstances" surrounding the warrant. *Payne*, 341 F.3d at 400; *Leon*, 468 U.S. at 922 n.23. "Issuance of a warrant by a magistrate normally suffices to establish good faith on the part of law enforcement officers." *E.g.*, *United States v. Shugart*, 117 F.3d 838, 843–44 (5th Cir. 1997) (citation omitted).

The Fifth Circuit has recognized four situations in which the good-faith exception generally does not apply—only two of which are relevant here: "when the warrant affidavit is so lacking in indicia of probable cause as to render official belief in its existence unreasonable" and when "the issuing [judge] was misled by information in an affidavit that the affiant knew or reasonably should have known was false." *United States v. Powell*, 850 F. App'x 284, 285 (5th Cir. 2021); Docket No. 143 at 4.[2]

---

[2] The other two scenarios arise "when the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that executing officers cannot reasonably presume it to be valid" and when "the issuing magistrate wholly abandoned his judicial role." *Powell*, 850 F. App'x at 285.

When challenging the application of the good-faith exception, the defendant bears the burden to prove by a preponderance of the evidence that the exception does not apply. *United States v. Rosa*, 721 Fed. App'x 403, 404 (5th Cir. 2018).

### III.

As explained below, Defendants have failed to negate the good-faith exception here.[3]

### A.

Defendants first argue that the good-faith exception does not apply because the affidavits of Officer Berg were "bare bones" and failed "to establish the reliability of the confidential informant." Docket No. 143 at 9. Without the statements of the informant (the Cooperating Defendant), Defendants contend, the affidavits failed to establish probable cause, and no officer would reasonably believe otherwise. *See id.* at 13. The Court is not persuaded.

An affidavit may rely on statements of a confidential informant to establish probable cause. *See, e.g.*, *United States v. Laury*, 985 F.2d 1293, 1312 (5th Cir. 1993) ("An affidavit may rely on hearsay—information not within the personal knowledge of the affiant, such as an informant's statement—as long as the affidavit presents a 'substantial basis for crediting the hearsay.'" (quoting *Illinois v. Gates*, 462 U.S. 213, 242 (1983)). Generally, the informant's statement must be both credible and reliable.

---

[3] A defendant must have a reasonable expectation of privacy in the area searched to have standing to complain of a Fourth Amendment violation. *United States v. Ibarra*, 948 F.2d 903, 905 (5th Cir. 1991). Here, it is undisputed that Defendants exerted control over and had a reasonable expectation of privacy in the properties identified in the warrants. Docket No. 143 at 5-6; Docket No. 144 at 5-6; Docket No. 150.

7

*See id.*; *United States v. Ortega*, 854 F.3d 818, 826 (5th Cir. 2017). Here, Defendants do not challenge the Cooperating Defendant's credibility. Indeed, as stated in the affidavits, the Cooperating Defendant relayed "first-hand observations" establishing his basis of knowledge. Docket No. 143, Ex. 1 at 3; *see, e.g.*, *Mack v. City of Abilene*, 461 F.3d 547, 552 (5th Cir. 2006) ("Here, the informant's report was based on a direct, personal observation . . . establish[ing] the informant's basis of knowledge."). And he demonstrated his veracity by confirming that he placed a tote with U.S. currency in the back of the Dodge Ram, which investigators observed on March 22. When an informant establishes his basis of knowledge and veracity in such ways, he is generally deemed credible. *See, e.g.*, *id.*

Defendants challenge only the Cooperating Defendant's reliability. But an informant who makes a statement against penal interest is generally deemed reliable and trustworthy. *See, e.g.*, *United States v. Gayfield*, 609 F. App'x 829, 830 (5th Cir. 2015); *United States v. McKeever*, 5 F.3d 863, 865 (5th Cir. 1993) ("The fact that the CI's statements were against his own penal interest amounts to substantial corroboration."); *United States v. Mendoza*, 2016 U.S. Dist. LEXIS 47114, at *13 (E.D. Tex. Mar. 17, 2016) (finding an informant to be reliable because his statement against penal interest "weighs heavily in favor of the reliability and trustworthiness of the information provided."). And here, the Cooperating Defendant made several statements against penal interest in the affidavits, including that he "has made large purchases of illegal narcotics" from Defendants, considers Diaz-Alacantara his "source of supply for Methamphetamine," knows Defendants to "have a 'stash' and

8

'cook' location in Mesquite," and placed "U.S. Currency owed to [Diaz-Alacantara] for the purchase of illegal narcotics" in the back seat of his Dodge Ram. Docket No. 143, Ex. 1 at 2–3.

The Cooperating Defendant's reliability is further strengthened here because investigators knew his identity and corroborated many of his statements. *See United States v. Martinez*, 486 F.3d 855, 862 (5th Cir. 2007) ("When the informant is known, her 'reputation can be assessed,' and she can 'be held responsible if her allegations turn out to be fabricated.'" (quoting *Florida v. J.L.*, 529 U.S. 266, 270 (2000)); *United States v. Blount*, 123 F.3d 831, 836 (5th Cir. 1997) ("[B]ecause the informant's tip concerning the [defendants] had been corroborated by the officers' investigation—even though no illegality had been observed—probable cause was established under the totality of the circumstances." (quoting *Illinois v. Gates*, 462 U.S. 213, 241 (1983)). For example, the Cooperating Defendant identified two individuals—Defendants—whom investigators had recently observed engaging in a transaction with the Cooperating Defendant. Docket No. 143, Ex. 1 at 2. And investigators already knew Defendants and believed the Cooperating Defendant's descriptions matched those individuals, including the color and type of vehicle driven by Diaz-Alacantara. *Id*. at 3. The Cooperating Defendant also told investigators that Defendants controlled a "stash and cook location" in Mesquite, and investigators already knew Defendants "to be associated with" a property in Mesquite. *Id*. at 2–3.

Defendants acknowledge that an informant's statement "against [his] own penal interest" is generally reliable. Docket No. 143 at 9–10. But Defendants contend

this principle "does not always apply with full force, such as when the informant makes the statement to 'curry favor with the police.'" *Id.* at 10 (quoting *United States v. Kolodziej*, 712 F.2d 975, 978 (5th Cir. 1983)). Defendants, however, fail to identify anywhere in the affidavits suggesting the Cooperating Defendant was attempting to "curry favor with the police." *Id.* Defendants speculate about the Cooperating Defendant's identity and suggest—without any citation—that "there have been promises made and fulfilled for information received." Docket No. 143 at 12. Speculation alone is insufficient to undermine the reliability of an informant's statement in a probable cause affidavit. *See United States v. Kleinkauf*, 2010 U.S. Dist. LEXIS 99367, at *2 n.1 (E.D. Tex. Aug. 6, 2010) ("The Court only considers the information contained in the affidavit in considering the sufficiency of the affidavit in establishing probable cause."). And even if the Cooperating Defendant were hoping for leniency here, his reliability was firmly established in the affidavits by his statements against penal interest, his known identity, and the corroboration detailed above. *See United States v. Collins*, 972 F.2d 1385, 1410 (5th Cir. 1992) (upholding a finding of reliability even though the informant was acting pursuant to a plea).[4]

Defendants have thus failed to show that the Cooperating Defendant's

---

[4] Defendants' reliance on *Kolodziej* is misplaced. In that case, the informants claimed simply that Kolodziej was their drug supplier. *See* 71 F.2d at 978. Nothing indicated that law enforcement was already aware of Kolodziej, as they were aware of Defendants here, or had witnessed a transaction between the informants and Kolodziej, as they did with Defendants here. *See id.* The informants' statements in *Kolodziej*, moreover, lacked the detail present here, and there was no other corroboration of the informants' information, unlike in this case. *See id.* Further, in *Kolodziej*, the court was applying a more stringent standard in reviewing the affidavit. The court was seeking to determine whether the affidavit established probable cause, not whether an objectively reasonable officer could in good faith rely on it, as here. *See id.* at 976.

10

statements in the affidavits were unreliable. The Court therefore finds that those statements, along with the other facts provided in the affidavits, "lend support to the inference that evidence of [criminal activity] might be discovered" at the three identified properties. *Payne*, 341 F.3d at 401 (holding that affidavit was sufficient to allow a judge to infer that evidence of child pornography would be found at defendant's home because defendant had a home computer with internet, admitted to posting illegal content online, and indicated that he had engaged in sexually exploitative activity). Certainly, Judge Nystrom could reasonably conclude that there was a "fair probability that contraband or evidence of a crime" would be found at the properties associated with Defendants. *Gates*, 462 U.S. at 238; *see also United States v. Perea*, 839 F. App'x 923, 924 (5th Cir. 2021) (holding that the magistrate judge could reasonably infer probable cause to believe that "additional stolen items" and weapons relating to stolen property could be found at defendant's residence based on evidence that defendant was in possession of specific stolen tools and had knowledge of a stolen truck); *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982) (upholding a search warrant that in part sought identification documents regarding a person suspected of using multiple aliases for drug smuggling operations); *United States v. Rodriguez*, 551 F. App'x 164, 166 (5th Cir. 2014) (The issuing judge, moreover, may "draw reasonable inferences from the affidavit, and the ultimate determination of the affidavit's adequacy is entitled to great deference on review.").

Accordingly, the Court finds that Defendants have failed to carry their burden to show that the officers searching the three Dallas County properties unreasonably

relied "on a warrant based on an affidavit [] lacking in indicia of probable cause." *Cherna*, 184 F.3d at 409 (cleaned up).

### B.

Defendants next contend that the good-faith exception does not apply because "[t]he affidavits make a deliberate misstatement . . . ." Docket No. 143 at 14. To be sure, the exception does not apply where the judge issuing the warrant "was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth." *Payne*, 341 F.3d at 399. Material omissions in the affidavit are treated similarly. *United States v. Gentry*, 941 F.3d 767, 780 (5th Cir. 2019). But the Court is not persuaded that the affidavits here included either false information or material omissions.

Defendants argue that the affidavits misled Judge Nystrom by "suggest[ing] a far longer investigation than the investigation that occurred." Docket No. 143 at 14. The affidavits, for example, stated that investigators received information from the Cooperating Defendant "[i]n March of 2021." *Id.*, Ex 1 at 2. But Defendants claim that the Cooperating Defendant communicated with investigators for the first time on March 30—the same day two of the three warrants were issued. *Id.* at 14. The affidavits also stated that "Investigator(s) conducted further research into the two [Defendants]" after hearing from the Cooperating Defendant, leaving the impression that the investigation was longer than the "approximately eight to eleven hours" in which it occurred, according to Defendants. *Id.*; *id.*, Ex. 1 at 2.

12

The affidavits are not misleading. Even if Defendants are correct that the Cooperating Defendant first spoke with investigators on March 30, the affidavits accurately stated that this occurred "in March." And "conduct[ing] further research" does not necessarily suggest an extended period of time and is not itself inaccurate. In any event, Defendants fail to explain how the impression of a longer investigation would have undermined Judge Nystrom's probable cause finding. *United States v. Morrow*, 789 F. App'x 398, 401 (5th Cir. 2019) (finding that the affidavit did not mislead when the defendant failed to show how additional clarification would have had an effect on the magistrate judge's probable cause finding); *United States v. Bogen*, 2017 U.S. Dist. LEXIS 16716, at *13 (E.D. La. Feb. 7, 2017) ("Even if the officers deliberately omitted statistical information . . . , the magistrate could still find probable cause based on the other information included in the affidavit."). As noted above, the Cooperating Defendant identified Defendants, admitted making "large purchases" of methamphetamine from them, told investigators about their "stash" and "cook" house in Mesquite, and confirmed that he paid Defendants for illegal narcotics while investigators were surveilling them on March 22. Docket No. 143, Ex. 1 at 2–3. Investigators corroborated many of these statements and provided additional details in the affidavit demonstrating probable cause to search Defendants' properties. *Id*. at 3. The length of the investigation has no bearing on that probable cause analysis.

Defendants requested an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to show that the false statements in the affidavits were made

13

deliberately. Docket No. 143 at 15. But there were no false statements in the affidavits. And to obtain a hearing, Defendants must make a "substantial preliminary showing" that the affidavits included misleading misrepresentations or omissions that are dispositive to the finding of probable cause. *Franks*, 438 U.S. at 155; *see also United States v. Tomblin*, 46 F.3d 1369, 1377 (5th Cir. 1995). Even if "March of 2021" and "conduct[ing] further research" were misleading, moreover, the affidavits include "sufficient content . . . to support a finding of probable cause," for all the reasons stated above. *United States v. Dickey*, 102 F.3d 157, 161-62 (5th Cir. 1996) ("[A defendant] is not entitled to a hearing if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause.").

Accordingly, Defendants have failed to show that the affidavits were misleading.

## C.

Finally, Defendants claim that the warrants include "irregularities": "two warrants provided to defendant during discovery have different signatures, different handwriting, and a different time on them than the warrants that were left behind on the premises, following the execution of the warrants." Docket No. 143 at 16. Defendants ask for "an evidentiary hearing . . . to seek an explanation . . . for these discrepancies." *Id*. at 17.

Evidentiary hearings, however, are "not granted as a matter of course." *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983). A hearing is granted only for factual disputes necessary to resolve the motion to suppress. *E.g., id.*; *United States*

14

*v. Hinojosa*, 392 F. App'x 260, 261 (5th Cir. 2010) ("General or conclusory assertions" are insufficient to warrant a hearing.) (quoting *Harrelson*, 705 F.2d at 737).  In *Hinojosa*, for example, the Fifth Circuit held that an evidentiary hearing was unnecessary where the "factual 'discrepancies' alleged by [defendant], to the extent that they exist, do not call into question the bases relied upon by the district court in its ruling." 392 F. App'x at 261.

So too here.  Defendants have failed to explain how the identified "irregularities" have any bearing on whether an objectively reasonable officer was entitled to rely on the warrants issued by Judge Nystrom—which is the only question presented by their motions.  As the Government explained, any "irregularities" between handwriting and timestamps can be explained by the fact that Judge Nystrom signed copies of the warrants sequentially and by hand.  For instance, it appears that he signed one copy of the warrant for the Ann Arbor Avenue property at 10:07 p.m., and then another copy one minute later.  *See* Docket No. 143, Exs. 4, 5.  The fact that the "signatures and other handwriting are not identical" is unsurprising given that Judge Nystrom signed them by hand.  *See* Docket No. 143, Exs. 6, 7.

The Court finds that an evidentiary hearing is not necessary to receive evidence on this issue.  *Harrelson*, 705 F.2d at 737 (Evidentiary hearings are granted "when the defendant alleges sufficient facts which, if proven, would justify relief.").

## CONCLUSION

Because Defendants failed to negate the good-faith exception, their motions to suppress (Docket Nos. 143, 144) are **DENIED**.

So **ORDERED** and **SIGNED** this **24th** day of **August, 2022.**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE